Parker, J.
On December 24, 1894, the defendant in error purchased two tickets from a ticket agent of the C., C., C. & St. L. R. R. Co., at Marion, Ohio, fora trip from Marion, Ohio, to Erie, Pa., and return tc Marion, Ohio. The tiokets were over the line cf railroad of said company to Cleveland, and thence over the line of the Lake Shore & Michigan Southern Railway Company to Erie, returning by the same course.
These tickets were purchased for the purpose of the passage of the plaintiff and his wife and family, the family, 'beside the wife, consisting of four children, their ages ranging from one year old to ten years old. When the defendant in error applied for the tickets, he was inquired of by the agent of the company at Marion whether he desired holiday tickets or holiday rates, and he nodded his head, or in some way indicated his assent. It appears that the rate for a holiday ticket was somewhat less than the regular rate over those roads between those points. It also appears that the holiday .tickets were limited in time for the passage, and that this was understood by the defendant in error at the time he purchased the tickets; that the limit for return upon these tickets was January 2,1895. He and his family took passage upon the road at Marion, proceeding to Cleveland, thence over the line of the road of the plaintiff in error to Erie, Pa., the tickets being accepted for such passage without question by the conductors of both lines of railroad.
Defendant in error with his family started from Erie to return to their home at Marion on December 81, 1894, boarding a train on the road of the plaintiff in error at about ten o’clock in the forenoon of that day. After the train had proceeded a short distance westward from the city of Erie on its course to Cleveland, the conductor passed through and the ticket were presented to him. He notified defendant in error and his wife that the tickets were not good for their passage. At that time he did not advise them why, but returning a few minutes later he informed them that the tiokets were not good and that they must pay fare or leave the train at the next station, which was Swanville, about ten miles west of Erie, because they had not procured them to be stamped by the agent of the plaintiff in error at Erie, and called their attention to a oertain provision printed upon the face of each of the tickets which reads as follows:
“4th. It is not good for return passage unless the orig *564 inal purchaser identifies himself cr herself as such to the authorized agent of the Lake Shore & Michigan Southern Railway, at point between punch marks, before commencement of return journey, and when this ticket is officially executed by being signed in ink, and stamped by such agent in space provided on baok of this contract, it shall then be good for return journey tc original starting point if used with — 'days next following date of such execution; provided further; such return limit shall not extend beyond date punched under hoad of “Extreme Return Limit,” which date, as I have said, was the 2nd day of January, 1895.
Because of this notification and requirement upon the part of the conductor, they alighted from the train when it arrived at Swanville. There is some dispute as to whether the conductor was himself present at the time they got off the train at Swanville, — 'whether it was not the brakeman, as contended by the railroad company, instead of the conductor as contended by the defendant in error, but that, in the view we take of the case, is immaterial. While there was no force or violence used to eject them from the tram, we find that the record supports the allegation that they were required by the conductor to leave the train. If they had been permitted to remain upon this train, it appears that they would have arrived at their home, Marion, Ohio, about 6 o’clock in the evening of that day. They were required to wait some time at Swanville, when they obtained passage upon another road running by the station of the road of the plaintiff in error, and returned to Erie, Pa., where they procured the tickets to be stamped, as required by this provision, by the agent of the plaintiff in error, and then they boarded a later train on the road of plaintiff in error and pursued their journey homeward, their tickets being aocepted by the conductor upon that. traiD, and arrived home about 1 o’clock of the following morning.
An action was brought by the defendant in error (plaintiff below) for the damage which he says accrued to him by reason of the tort committed by the plaintiff in error, (defendant below) through its servant in requiring him to leave this train at Swansville, he contending that bis ticket did not require a stamp upon it by the agent at Erie; that it should have been accepted by the conductor; that he should have been permitted to remain and ride upon the train, and that the action of the railroad company through its servant, the conductor, in requiring him to leave the train was wrongful. He claims damages on account of the *565 loss of time, inconvenience, etc., incident to this action of the conductor,and for the injury to his feelings, the humiliation and mortification that he suffered ly reason of being required to leave the train in the presence of many passengers, who,.he says, were upon the train at the time and observed what occurred. Though the ticket held by or for his wife is identical in form with that held by defendant in error, yet as this aotion involves his right only, I shall hereinafter refer to his ticket only.
In addition to this provision which I have read, there are other provisions printed upon the ticket limiting the right of the passenger holding it and limiting the duties and obligations of the railroad company with respect to such passenger, making them somewhat different and less than the duties and obligations of a railorad company to an ordinary passenger holding an ordinary ticket. These are set forth in paragraph numbers 1 to 11 inclusive.
Following the provisions printed upon the face' of the ticket, is a space left for the signature of the purchaser of the ticket, and another space left to be filled by the signature of the agent selling the ticket as a witness to the signature of the purchaser, another space for the date of the sale to be filled by the agent selling.the ticket, and upon the back of the ticket is a blank form reading as follows:
“Agent of the Lake Shore & ] “Agent of the Cleveland,, Michigan Southern- R’y will ] Cincinnati, Chicago & St., stamp in space below and wit- [ Louis Ry Co, will stamp in ness signature of original pur- j space below, chaser. ¡
“In compliance with my contract with the Cleveland,. Cincinnati, Chicago & St. Louis Railway Co. and lines over which this ticket reads, I hereby subscribe my names as-the original purchaser cf this ticket.
.......................Original purchaser.
“Witness:........................
“Dated....................189. .
None of these blanks were filled in. The purchaser was not required to sign the ticket upon obtaining it and paying for it. The agent of the company at Marion did not sign it, the purchaser did not present the ticket to the agent at Erie before taking passage upen the train from which he was ejected, nor did he sign it in the blank upon the back of the tioket.
That the agent of the C., C., C. & St. L. R. R. Co. *566 at Maricn was the agent cf the plaintiff m error in selling the ticket in question, is fairly established by the evidence in this case. The acceptance of the ticket on the going trip, the rejection for certain specific reasons only by the conductor of the plaintiff in error, tire subsequent stamping of the ticket by the ticket agent at Erie, the subsequent acceptance, etc., are sufficient evidence of agenoy, or cf ratification of the authority of the agent at Marion.
There is no evidence tending to show that the conductor did not act in entire good faith in requiring the defendant in error to leave the train; but the fact that the conductor may have acted in good faith and may have supposed that he was obeying the rules of the company, even if he was in fact obeying the rules of the company laid down for h'is guidance, would afford no excuse to the company in a suit brought against it for tort in the violation of its .contract with the passenger. This has been recently held, though perhaps it is so plain that it does not require the citation of any authorities in support of it, in the case cf the P., C., C. & St. L. Ry. Co. v. Reynolds, 55 Ohio St., 370. At page 384, Judge Minshall, in the closing paragraph of the opinion, uses this language;
■ ‘The genera] principle derived from the cases is, that where, by the fault of an agent of theoompany, a passenger takes the wrong train, or is without a ticket, or one imperfectly or erroneously stamped,or for any similar reason,and is ejected by the conductor of the train in pursuance of the rules of the company, it is liable to him as for a tort. The rule concedes to the company the right to make reasonable rules for the conduct of its business and to require their enforcement-bv its agents. The contingency that in certain cases the company will be made liable by the act of its conductor in following its rules, where the appearances on which the act is created by the fault of another agent, of which he had no knowledge, is a risk incident to the privilege enjoyed of making rules, and it should .suffer for the fault of the agent that caused the mistake, rather than an innocent person.
The principal question presented for our consideration arises upon the charge of the court as to the rights and obligations of the plaintiff below as a passenger, and of the defendant below as a carrier of passengers under the faot, and epecially with referenced this clause No. 4, printed upon the face of the ticket.
The court charged the jury in effect that if the plaintiff *567 below knew or this matter printed upon the tioket before or at the time he purchased and received the tioket, or if by the use of reasonable prudence, care or diligence, he might or ought to have then known of it. he was bound by it as a part of the oontract respecting his rights to travel or be carried as a passenger, and that under such circumstanoes the conductor of the defendant company has a rigt to eject him from the train; but if he did not then know of it, or might, or ought net to have become aware of it, he was not bound by it, and his ejection from the train was wrongful.
Plaintiff in error contends that this is error; that the stipulations or conditions printed upon the ticket form a part of the contract for oarriage, and that the defendant in error was bound thereby whether he knew of or read the same before or at the time he bought the tioket or not; that he was bcund to know and observe what was printed plainly upon his ticket; that even if the omission of the agent at Marion to require him to sign the ticket at the time he purchased it amounted to a waiver of the requirement that he must sign it on the back for the purpose of identification at the Erie office, that that would not operate as a waiver of any of the other conditions printed on the tioket, and especially not that as to having it stamped by the agent at Erie.
Since the purchaser of the ticket did not sign this ticket at the office wher9 issued, and did not by knowledge and acquiescence, or otherwise, assent to these provisions and limitations, it would seem to present a.question whether they could have had any effect upon him in any aspect of the case rather than whether any thing was waived.
Did the company ever require or seek to require him to agree to these qualifications of the general duties of the company on the one hand, or of the rights of the passenger on the other hand? We are'of the opinion that under the circumstances which the testimony adduced on behalf of the defendant in error tends to show, that is, that these stipulations were not known to or noticed by him; that his attention was not called to them; that he was not required to sign the same before or at the time that he purchased the ticket, he was not bound by them, and that he would not have been bcund to observe or comply with this requirement even if it had come to his knowledge after buying the ticket. That that is true of the provision as to signing at the Erie office is conceded in argument by counsel for plaintiff in error, *568 and we think properly. This point is decided in Kent v. Railroad Company, 45 Ohio St., 284. In that case the holder of a ticket was required by a conductor as a condition of his remaining upon the train, to sign the ticket, and declining to do so, he was ejected from the train. He objected to signing because he understood that by so doing he would assume oertain risks and waive certain rights against the company so as to modify materially his rights as a passenger as against the company. It appears that was no objection on the part of the plaintiff in that case to any part of the contract which he was asked to sign except that contained in the sixth clause, which reads as follows:
“6. That in consideration of the reduced rate at whioh this ticket is solo, and the privilege of using it on all regular passenger and suoh freight trains as are advertised to carry passengers, the purchaser assumes all risk of accidents, and expressly agrees that the company shall not be liable under any circumstances, whether of negligence or fraud on tlie part of its agents, or otherwise, for any personal injury, or for any loss cr injury to his or her property or baggage while using the ticket, and agrees that he or she will not oonsider the company as common carriers, or liable to him or her as such. ”
Judge Owen says, in the course of the opinion, at page 288:
“There is nothing in the circumstance that the ticket in the oase at bar was sold'at a rate reduced from the regular fare, to take it out of the rule,” referring to the general rule stated in the preceding paragraph, as follows:
“It is well settled that the purchaser of a railroad ticket does not, by its mere acceptance, acquiesce in, and bind himself to, all the terms and conditions printed thereon in the absence of actual knowledge of them.”
It is urged that this amounts to an intimation that where a ticket is sold at a reduced rate, there is something in that oircumstance to take the case out of the rule. Read in the light of the facts of the case, we think that expression is of an opinion directly the opposite of that which counsel for the plaintiff in error believe is intimated. In that case the ticket was cf a special sort, and because the passenger was of a special class, that is, the agent of a shipper, was sold to him at a reduced rate. The court says these acts did not take the ease out of the rule stated in the preceding paragraph, which rule 1 have read.
In the case at bar the reduction in the fare does not ap *569 pear to have been different from that given to all passengers making return trips at the holiday season. That the plaintiff below was fairly apprised of the special limitation as to time for the use of such ticket fairly°appears and may be held, but that he was by that circumstance apprised or even put upon inquiry as to any further special limitations upon the contract, we think does not follow. In the case of the B. & O. R. R. Co. v. Campbell, 36 Ohio St., 647. the same doctrine is held with respect to the provisions limiting the liability of the carrier as to baggage, suoh a provision as is found in clause 6 of the ticket in the case a bar the clause reading:
“6th. Baggage Liability is limited to wearing apparel not exceeding $100 in value.”
The rule that a railroad ticket with such stipulations printed upon it but not signed by the passenger or otherwise agreed to does not constitute an agreement including suoh terms, but is simply a voucher that the person who holds it has paid his fare, is very distinctly stated in the case last cited as a well-settled rule in Ohio. The reasons for the rule and the rule in our opinion apply with full force to such provisions on a ticket as those contained in clause 4 printed upon the face of the ticket in the case at bar. Derothea Rawson v. The Pennsylvania R. R. Co., 48 N. Y., 212, is a well considered case holding the same doctrine.
An authority to which we are cited in support of the contention that a ticket containing such a provision need not be signed hy the purchaser in order that he shall be bound thereby, is Drummand v The Southern Pacific R. Co., 7 Utah, 118, as digested in a note at page 1091 of vol. 25, of the American and English Encyclopedia of Law; but wheth-r the purchaser in that case assented or agreed to the provisions otherwise than by signing does not appear. We have not seen a full report of the case. If there was not such assent or agreement, the case cannot be reconciled with the oases of Kent v. Railroad Co. and Railroad Co. v. Campbell, supra.
Holding the views here expressed, it follows that we find no error in the charge of the court, or in the refusal of the court to oharge as requested on this proposition.
We find no other errors in the record material and prejudicial to the plaintiff in error unless it be in the ruling of the court upon the motion for a new trial, in which it was set forth as a ground for a new trial that the damages allowed are excessive.
*570 In This case there is no evidence of any rudeness, violence or insult upon the part of the conductor who required the defendant in error^with his family to leave this train. It is said by them that he was firm — I believe that is the word used, something to indicate that he was decided and firm— in the requirement. It does not appear that the attention of any passenger in the car was attracted to them by what occurred between them and the conductor. So far as appears from the record the passengers in the oar other than these people might have supposed that they had taken passage for the village of Swanville, and Wore there alighting from the train because that was their destination. There is no positive evidence that the plaintiff in fact felt humiliated or disgraced by what occurred. He does not say so. There was nothing said to him by the conductor impugning his motives or impeaching his honor. The conductor appears to have simply called his attention to the fact that he had omitted a formal requirement which the conductor as an agent of the company was bound to insist upon before allowing him to continue upon the train.
It appears that he was accorded the privilege of paying fare tor himself and wife (the children being under the age at which fare was required of them) to Cleveland, and that it was said to him by the conductor that by so doing he might have his ticket stamped there and proceed upon his journey without delay. This would have required him to spend perhaps only temporally, a little over $5.00. There is nothing in this testimony tending to show that if he had done so he would have thereby admitted or conceded in the presence or with the knowledge of other passengers that he had been insisting upon something wrong, and that thereby he would be subjecting himself to any imputation of attempting fraud upon the railroad company.
It appears that the conductor or the brakeman — there is some dispute about which, it is immaterial which — assisted them to alight from the train, spoke to the agent at Swan-ville and explained the situation to him, and asked him tc secure passage for them free back to Erie; that they desired to go upon a train earlier than any furnished hy that railroad, and so were required to pay .their passage upon the other road that took them back to Erie.
It is not a case in which the jury was authorized to allow any vindictive or punitive damages. It has been suggested that unless a substantial verdict is returned against a railroad company in a case of his kind passengers will not be secure *571 in their rights, and that their rights will be violated with impunity. We think such a sum might have been allowed by the jury as would have pervented the likelihood of anything of this kind resulting without its being as large as was returned in this case. That, however, if it had entered into the consideration of the jury, would have been a consideration proper if the allowance of vindictive or punitive damages had been proper, and not otherwise. They had no right to consider anything of that kind where only compensatory damage was to be allowed. We are of the opinion, that the verdict is excessive, and we conclude that if the defendant in error is willing to enter a remittitur as to all exceeding $350.00, with interest from the first day cf the term at which the verdict was returned, the verdict will be affirmed; otherwise it will be reversed because of the excessive damages.
Hon. C. P. Wickham and George E. Reiter, Attorney for Plaintiff in error.
Johnson & Young, and Phinney & Merrill, Attorneys for Defendant in Error.